Anthony Kenneth Anderson #1082999
Southern Desert C.T.N
P.O. Box 208
Indian Springs Nev. 89070

3-22-2022

| | |
|---|---|
| ANTHONY KENNETH ANDERSON<br>Plaintiff<br>VS<br>STATE OF NEVADA et al<br>8th District Courts et al<br>Charles Thompson et al<br>Chief Justice 8th Dist Courts<br>Governor Brain Sandoval et al<br>Real Party of Interest<br>* STATE OF NEVADA *<br>Defendants | UNITED STATES DISTRICT COURT DISTRICT OF NEVADA<br>Case # 2:22-cv-00127-RFB-BNW<br>28 U.S.C. § 1343 (a)(3): 42 U.S.C § 1983<br>Individual/Person Injury Complaint<br>* PRELIMINARY INJUNCTION *<br>INVOLUNTARY SERVITUDE<br>NOTICE OF Preliminary Injunction Requesting Court Mandated Commission UNDER Rule 5.1, Rule 5.1 (a) Constitutional Challenge To Mandatory Mandated Requirements Bonds, oath, Cert of elec, Before operating OFFICE<br>Constitutional QUESTION? |

* Preliminary INJUNCTION *

Plaintiff A. ANDERSON #1082999 IN PRO-SE Request Preliminary INJUNCTION IN # 2:22-CV-00127-RFB-BNW Plaintiff presenting "Clear AND Convincing Evidence" of The State of NEVADAS Encroachment against plaintiffs INDIVIDUAL AND PERSONAL Rights FINDINGS OF Facts AND Conclusion of law AND ORDER Supporting unconstitutional Imprisonment Resulting FROM Violations of procedural Due process of Law 11½ years, A Direct Result of Racial Discrimination on ANDERSON a Minority IN Violation of THE 5th, 14th 13th AND 8th U.S. Const Amendments - Plaintiff provides THE "TRUE DEFINITIONS AND Formal proclamations OF THE U.S. Const AND Law."

# * Constitutional Law Individual Rights *

1.1 INTRODUCTION AND OVERVIEW

IN ONE SENSE, The Entire Body of The Constitution IS DESIGNED To Protect Individual Rights. IN Fact, Many of The Framers believed That Political structure Created By The Constitution was A Primary AND Essential Vehicle Through which To protect The liberty of The People. of Such Structural Devices as The Seperation of powers, Checks AND balances, bicameralism, Enumeration of Powers, AND FEDERalism, Among others.

WERE Thought To PROVIDE A Substantail bulwark against Govermental Tranny. Structural Bias INCLUDING only a Few Specific Protections FOR what we Now Commonly Concider "PERSONAL Individual Rights" SEE, eq, ART I §9, Cls 2&3 (Privilege of The [PERSONAL INJURY] Proscription against bill of Attainder AND ex-post facto laws) ART III §2 cl. 3 (Rights To Trail By Jury).

[Constitutional Bias AND PREJUDICE Allowed in MODERN AMERICA]

THE U.S. CONST 13th AMENDMENT AS well AS THE "NEVADA STATE Constitution" Prescribe "ENFORCEable Slavary By AND Through "INVoluntary-SERVITUDE"" AS such Acts are proven IN Case #C10-268406-1 against a Minority Anthony K. ANDERSON #1082999

§ 1.2 The 14th Amendment An Introduction OVERVIEW

(A).

Section 1 of The 14th Amend Consists of Two Sentence's. The Frist Sentence Provides: "All Persons born or Naturalized in The United States, And Subject To The Jurisdiction Thereof, are Citizens of The U.S. and of The State wherein They Reside"!

The Phrase "subject To the Jurisdiction Thereof" Requires Further Investigation. That Investigation would Reveal That The phrase was Designed To Exclude Two Classe's of Person's. Petitioner Could Also quibble About The word "**Reside**" but with-out Too great an Effort, a workable And Relatively Noncontroversial Meaning would Be discovered, Namely, **Domicile** or place of Permanet Residence. In sort The Frist Sentence Define's Citizenship at Both "Federal And The State levels" In Relatively Clear Terms And only a Minimal Need To look beyound The Specific langage used.

Despite The Relative Clarity of The Frist Sentence History is Benifical. Prior To The Civil war, The U.S. Supreme Court Had Held That An African American Sold as a **Slave** **Is Not** a **Citizen** of The **United State's**

As Petitioners Records Reflect In Case C-10-268406-1 He Was Also Treated As If He was Not a Citizen of The United States. Dred Scott Vs. Sandford 60 US (19 How) 393 (1857) The Dred Scott Decision, which Denied The status of Citizenship To Slaves, Former Slaves and Their "Decendents"! Was Viewed By Republicans as a Precipitating and Infamous Cause of The Civil war!

Petitioner Contends As a Minority in Modern Day America; These, Above Mentioned "Jim Crow" Acts are still Practiced in The "State of NEV." 8th District Courts Modern Day Slavery Found In Case # C-10-268406-1 Though it is a Bit obscure To The Modern Date And Time! But history Repeats Her-self, Giving The Underlying Purpose. End Result Another Minority Inslaved! How-every The langage of The Amendment is Much Broader Than would Have Been Necessary To Simply Overrule "Dred Scott" It Covers all Persons Born or Naturalized In The United States But Mainly Focus's on 'Minoritys And Men of Color'!

Individual Rights

(B)

The Next Part of The Secound Sentence Provides "[N]or Shall any State deprive any Person of life liberty, or Property with-out Due-Process of law". Petitioner Has (Demonstraighted Violations of Procedural Due Process of law). By The State of NEVADA'S 8th Dist Courts For The last 11 years And The Records Reflect "Procedural Due Process of law" "HAS BEEN Refused Continously Refused"! In Case # C-10-268406-1 [How was it That Easy For 11½ years]? The State of Nev; Part of The "Union of The united States" Takes away Petitioners life, liberty And Property. with-out Providing "Full Procedural Due Process of law"!

Implicitly, The Rights To life, liberty And Property are Not Absolute! A Deprivation of These Rights To life, liberty And Property IS Permissible as long As Due Process IS Satisfied or "Said Satisfied"! With The word "Process" Suggesting Procedure; The word "Due" Suggests Appropriat, Proper or Reasonable. A person And or "Petitioner" is Therefore Entitled To Appropriat Procedures Before Being Deprived of Life, liberty, or Property. [Procedural Due Process]

Presumably Petitioner Now Reference what Accepted Practices will Provide Guidance As To what Procedure's will Be Deemed a "Servitude" To His current violations of "Procedural Due Process" IN Case # C-10-268406-1 with The Category "PERSON" Appears To be broader Then The Category "Citizen" All citizens are Persons; All PERSONS are Not Necessarily Citizens! [Minoritys ?]

The Due Process Clause Protects The More Inclusive category Finally § 1 Provides "[N]or [Shall any STATE] Deny To any PERSON with-IN its Jurisdiction The Equal Protection of The law which The State of NEV, 8th Dist Courts Have Clearly Violated against Petitioner in # C-10-268406-1 with- The Phrase "Equal protection of The laws" Suggesting at The Very least That otherwise Neutral laws Must Be Enforced in an Even-Handed Manner For The Benefit of All who Fall with-IN The letter of Their Protection

Or Does it Mean, IN Addition, That State laws May Not Discriminate or Classify. IN other words, Does it Require That The law it-self Be Evenhanded? "Assuming That This is The Case" AND Keeping in Mind That all Laws Classify

IN SOME MANNER. IS THE Potentail BAN ON Classification limited TO CERTAIN TYPES OF Discrimination: Found in The 13th U.S. Amend: "Involuntary Servitude" .........

INDIVIDUAL Rights

A Brief Historical Survey

(C)

The context surrounding Case# C-10-268406-1 AND THE Said Adoption of The Fourteenth U.S. Amend Can Now Be Succinctly Discribed as "Slavery IN MODERN Day America HIDDEN in Plan view Behind The New Jim Crow action "Plantation Prison"

With total Disregard To The Abolition Movement, The Civil war, AND The Reconstruction Response To EVENTS in The Post-Civil war South Including The Adoption of The "Black CODES": which This Discrimination was Applied To Case # C-10-268406-1 Placing Petitioner ON a 'MODERN Day Plantation' using The 13th Amend #1 Neither slavery Nor Involuntary Servitude 'EXCEPT For Punishment' for Crime where of The Party shall Have BEEN "Duly Convicted" which in Case # C-10-268406-1 'Duly Convicted is ERRONUS' Fact ON (2-29-2012) Their was Oral PRONOUNCED SENTENCE which under N.R.C.P. The Sentencing Court Has (10) Ten Days To Sign That Sentence Into Effect The word Duly Cant Be used! The Due Manner of Time To Sign Final charging Document Expired By (2 Days) (J.O.C) Signed (3-12-2012)

Petition state's The Records Reflect with-out Full Constitutional Authority The 8th Dist Court IN AND FOR Clark County, State of Nev. Has "Relinquished His Natural Born U.S. Full Citizenship with-out "Due Process of law" AND NOT IN Due Manner of Time" Applied The US 13th Amend: IN # C-10-268406-1 To His Liberty. Petitioner Now AND For The past 11½ years Has suffered The Effects of Slavery UNDER Case # C-10-268406-1 which The Thirteenth Amendment which Abolished Slavery, Had Been Ratified in (1865) its Now (2022) AND it is EVIDENT (AND Believed To Be EVIDENT) That in Case # C-10-268406-1 The institution of Slavery Has Been Replaced By a System That was Designed To Keep The Former Slaves in a Condiction of "Virtual Servitude" "The Black CODES" ENActed By Most of The Southern States. AND Severly Restricted; The Civil Rights of Former Slaves! As well As The STATE of NEV. Has Handed "ANDERSON" virtual servitude. As IN Case # C-10-268406-1 The Above Black CODES Have Been Applied IN The Form of "MODERN Day Slavery" with Full Denial of (Procedural Due PRO-cess, of Law) Placing petitioner ON a MODERN Day "Prison Plantation" (Jim Crow Slavary)

* Personal Injury *

Petitioner state's [The Black CODES] Has Restricted His Civil Rights as well as His Natural Rights To Love His wife Children And Grand Children, Brother's And sister His Ability To Aid in Home Finance as well as His Ability And Rights To Enter Into Contracts, To Purchase Property, And To sit on Juries. In Addition Their is Evidence That former Slaves were Not Being given Full And Impartial Protection of otherwise Neutral laws Both Formally and Informally The Former Slaves As well as "Petitioner" are Treated as "NONCITIZENS"

Petitioner states in Case# C-10-268406-1 The Response To The Condictions That Congress passed The Civil Rights Act of 1866 Did Not Apply!!

Pertinent Part

That Their shall be No discrimination in Civil Rights or Immunities ... on Account of Race but The Inhabitants of every Race ... Shall Have The Same Rights To Make And Enforce Contracts To sue, be parties, And Give Evidence To Inherit, purchase lease, sell, Hold And Convey Real and personal property, And To Full And Equal benefits of all Laws and proceedings for The Security of Person And Property, And Shall Be subject To like Punishment .... And No Other.

Individual Rights

Primary Purpose

(D)

Petitioner With Factual 'Subject Matter' states "Civil Rights or Immunities" described in The Civil Rights Act of 1866 - These Rights are remarkable Similar To The Fundamental Rights Violated in Case # C-10-268406-1 That are Associate with Article IV's Privileges Immunities Clause And like......That clause, The Civil Rights Act Prohibited discriminatory Treatment of Citizens exercising Those Rights if This Interpretation Is Correct, one purpose of The Fourteenth Amendments Privilege or Immunities Clause was To Prevent States From denying U.S. Citizens, as defined in The First Sentence of § 1, The Equal Exercise of Those Fundamental Civil Rights And Immunities. A Second strand of History suggest That Privileges or Immunities Clause May Have been Intended To Have an even wider Application. The Court in Mayor & City Council of Baltimore 32 U.S (7 Pet) 243 (1833) Held That The Bill of Rights limits only The Power of The Federal government And Not The power of The States! Prior To The Civil war Abolitionists Rejected The Soundness of Barron For a Variety of Reasons.

They believed That The First Eight Amendments To The Constitution Either were or should Be Fully applicable against The STATE'S Privilege or Immunities Clause Protected at least some additional Fundamental Rights Beyond Those listed IN THE Civil Rights ACT of (1866)

Petitioner STATES, The Available Information is Far From dispositive - SEE: Raoul Berger, Government by Judiciary (1977) (Arguing That The First Eight Amendments of The Bill of Rights were NOT INCORPORATED against The States via The Privileges or Immunities clause):

INDIVIDUAL RIGHTS

(E)

Petitioner state's, "IF The Privileges or Immunities Clause was in fact Designed To Prevent The Denial of Certain Fundamental Rights" What Purpose Can Be Assigned To The Full Denial of Procedural Due Process AND Equal Protection Clause? That was Applied To Case # C-10-268406-1 The Equal Independent Significance of The Due Process Clause is NOT difficult To Envision It Provides Procedural Protection against The Taken of life, liberty or Property Again The Individuals in particular → The petitioner

Whom Has Been Deprived of Procedural Due Process as Compaired To "Former Slaves And union Sympathizers - were Deprived of basic Civil Rights with-out proper Precedures." The Due Process Clause specifically Addressed That Concern ! That Petitioner was Deprived of In Case # C-10-268406-1

Taking The Foregoing Together, What Can Be Said of § 1 of The Fourteenth Amendment? First, The Privileges or Immunities Clause was Seemingly Intended To Prevent State Discrimination This Clause was over-looked in Case # C-10-268406-1 on (3-12-2012) And (3-14-2012) By The State of Nev, 8th Dist. Courts, Chief Justice of 8th Distrit Courts And "Usurper Charles Thompson." With "No Respect To The Fundamental Civil Rights;" Such as Those Protected By Article IV's Privileges And Immunites Clause.

Second: The Privileges or Immunities Clause Probably was Thought To Include Certain other Fundamental Rights Found in The Bill of Rights, Such as Freedom of Press And Freedom of Speech Third: The Privilege's or Immunities Clause May Have Been Designed To Incorporate all The Provisions of The First Eight Amendments

To The Constitution.

Fourth, The Due Process Clause Required States To Provide Fair or Reasonable Procedure Prior To Deprivation of life liberty or property. In which The State of Nevada Failed To Do so which Deprived Petitioner "Procedural Due Process" In Case # C-10-268406-1 Resulting in "unconstitutional Imprisonment."

Fifth

The Equal Protection Clause was probably designed merely To Remedy a states unequal Enforcement of The Laws - which Petitioner Demonstrate the The State of Nevadas Actions in Case # C-10-268406-1 Not Only Effects Petitioner with Prison plantation, But a Multitude of People Have Been Deprived of The 14th Amendments Procedural Due Process of law Clause By [Charles Thompson] And State of Nev., 8th District Courts.

Early Judicial Trends in Construing The Fourteenth Amendment

(F)

Petitioner Begin Interpreting The Due Process Clause as Providing Protection For

For Substantive Rights Not Necessarily Found In The Bill of Rights. The liberty of Contract, for example, was Deemed a "Fundamental Right" That Could Not Be INVADED By The States with-out Sufficient justification, The Records Reflect That "Judgment of Conviction # C-10-268406-1 is Deemed a legal Contract The "Final Charging Document", which was Fraudulently Signed By 8th Dist Courts, State of Nev., [Charles Thompson] "on or about 3-12-2012 Filed 3-14-2012". Here on 3-12-2012 [Charles Thompson] "Did Not Qualify" To Sign Petitioner's Final Charging Document. Restraining Petitioner From liberty unconstitutionally Depriving Petitioner of [Procedural Due Process] of law" with-out any legal Justification Allgeyer Vs. Louisiana 165 U.S 578 589. (1897)

Again This "Substantive" Approach To Due Process operated as a Substitute For The Judicially EVISCERATED Privileges or Immunities Clause Finally, In The late Nineteenth Century, The Courts Begin To Apply The "Equal Protection Clause" as Something More Than a Provision For Equal Enforcement of The law Strauder Vs. West Virginia 100 U.S. (10 otto) 303 (1880)

The Equal Protection Clause Filled Another Gap. That Petitioner was Deprived of IN Case # C-10-268406-1 By The STATE OF NEV. The Questionable decision in The Slaughter-House Cases; by Putting teeth Into The Concept of Equality In the Context of basic Civil Rights. In Addition, The Courts Interpreted the Equal Protection Clause as Applicable To ALL Race's; Yick Wo vs. Hopkins 118 US 356 (1886), Despite what One Could Characterize as The more Narrow Focus of The Precise Circumstance's leading To The Adoption of The Amendment. The Scope of This Antidiscrimination Thrust was, However, limited by Separate But Equal Doctrine Announced in [Plessy vs. Ferguson 163 U.S. 537 (1896)

The Foundation For The Modern law of The Fourteenth Amendment was Established This Foundation Includes a Commitment To The Judicial Protection of Both Substantive And Procedural Rights as well as To an Emerging Concept of Equality Under Law which Petitioner States Case # C-10-268406-1 was Deprived of Substantive Claims SEE: Case# A-21-829211-W Order Journal Entries (April 21st 2021) RJC Court Room 15B Page #2 Line #7 'Substantive Claims Waived' [Plaintiff Claims Involuntary Servitude on April 21st 2021]

INCORPORATION DOCTRINE (JUDGMENT OF CONVICTION C-10-268406-1)

Petitioner Request The Before Mentioned Facts Be Incorporated into This Motion Requesting Preliminary Injunction In Case # 2:22-CV-00127-RFB-BNW [Release From Current Unconstitutional Custody] A.S.A.P!

How Every, Most of The Provisions of The Bill of Rights Are Now Fully Enforceable against State or local government Action By Virtue of The Incorporation doctrine.

INCORPORATION PRELIMINARY INJUNCTION

The Before Mentioned Findings of Factual Violations of Constitutional Articals/Laws By #1 State of Nevada #2 8th District Court In And for Clark County #3 Chief Justice 8th Dist Courts #4 Charles Thompson #5 Former Governor Brain Sandoval In US Dist # 2:22-CV-00127-RFB-BNW Under Personal Injury 28 U.S.C. §1343 (a)(3) 42 U.S.C §1983.

DO IN-FACT Qualify Plaintiff Preliminary Injunctio Relief with Good Cause Shown: The State of Nev. use of Encroachment Supported By "Clear And Convincing Evidence" under Full Color of Civil Law"! Fraudulent Document (Judgment of Conviction) C-10-268406-1 Signed Into Effect (3-12-2012) And Filed (3-14-2012) "with-out Proximate Cause"

Violations The Records Reflect

NEVADA Constitution - Article 17, SECTION 20

Plaintiff Also Brings To The Attention OF This court IN Case # 2:22-CV-00127-RFB-BNW. That The # 1) STATE of NEVADA #2 Regional Justice Center, #3 The 8th District Courts #4 [Charles Thompson] #5 Chief Justice For 8th District Courts #6 Former Governor Brian Sandoval NEVADAS - Failure To Comply - AND Further *Knowing Knowledge Wilfull Fraud* 8th District Courts violations of Constitutional Law IN Case # C-10-268406-1: (20 State Officers AND District Judges To Be Commissioned By Territorial Governor; State Controller AND Treasurer To Furnish Bonds.

All officers of state AND District Judges First Elected under This Constitution shall Be Commissioned By The Governor of This Territory, which Commissions shall be countersigned By The Secretary of The same, AND shall qualify Before Entering upon The Discharge of Their Dutys, Before any officer Authorized To Administer Oaths under law of This Territory, AND Also The State Controller AND state Treasurer shall each Res-pectively, Before They Qualify AND Enter upon The Discharge of Their duties, Execute AND Deliver To The Secretary of State of The Territory of NEVADA AN Offical Bond, Made Payable To The People of The State of NEV. in The Sum of Thirty Thousand Dollars To Be Approved By The Governor of The Territory of NEVADA; AND shall also Execute AND Deliver To The Secretary of State Such other or Further Bonds as May Be Required By law: NEVADA Failed To Comply with Art 17 Sec 20

The State of NEV, 8th Dist Courts, Charles Thompson. USE OF ENCROAHMENT Has Deprived Plaintiff OF Procedural Due process of law. Resulting IN "A UNConstitutional Lost of Liberty"

Plaintiff STATES: That EVEN IF He is Morally Guilty of THE UNDER-lying OFFENCE, HE'S unconstitutionally restrained from liberty 11½ years with Clear AND Convincing EVIDENCE UNDER Any Color OF Civil/Constitutional Law

Clear Validity of USURPation AND unconstitutional Imprisonment Involuntary Servitude

- CONFIRMED -

#1 PERSONAL INJURY #2 FRAUD #3 USURPation

Facts #1 8th Dist Court Staff Attorney (ADRIAN VIESCA) on (Sept 23 2020) upon Request

#1 Certified Notarized Copy of Judge Charles Thompsons oath of office (Active 3-12-2012.

#2 Certified Notarized Copy of Judge Charles Thompsons Certificate of Election (Active 3-12-2012.

#3 Certified Notarized copy of Judge Charles Thompsons appointment of Office (Active 3-12-2012.

CONFIRMED FINDING

we were unable to locate The Above Requested Records Eight District Courts ADRIAN VIESCA 702-571-3098

* NO Public Record ON File *

CONFIRMED

OFFICE OF The SECRETARY of State (State of NEV)
(January 7th 2020)
IN REGUARDS To your Request For Certificate of Election For "Charles Thompson" we Do Not Have That File Contact Him (Violation NEV Const 5, 20

Fraudulent Filing Violation NRS 225.084. NRS 225.070 Filed with Carson City against Charles Thompson (2-25-2020)

Findings OFFICE of The Secretary of State (State of NEV) (July 21 2020)
we Suggest you Seek privet legal Counsel To Pursue your argument "Thompson" was Not Eligible To Hold Office at The Time of your Conviction. (Violations of NEV Const 6, 20

State Bar of NEVADA (April 22 2021)
Audit Report Reference # OBC21-0417
EXCEPT HIS Date of ADMISSION To Practice Law State Bar Has No Information Requesting Thompson Being Judge Thompson

Public Records

Mailed (9-2-2020) Correspondence Letter To Charles Thompson Requesting Legal Document NEVER deny Response Return To Sender

Leavitt Group

No Public Records For Charles Thompson's Public officials Bonding And Crime policy No Malpractice or Mal Feasance Pro-tection under N.R.S 283.440 For Charles Thompson

Their-Fore State of Nev, 8th Dist Courts And Chief Justice Allowed Charles Thompson To Engage in unlawful Employment willfully Failing To Comply with title VII of Civil Rights Act of 1964 42 U.S.C §§ 2000 et Seq or NRS 613-330

Plaintiff Now Request a Preliminary Injunction while Plaintiff Is Getting Relief Through "This Personal Injury Injunction" See Jackson vs. District of Columbia 254 F.3d 262 (D.C. Cir 2001 which clearly state's If you are Forced To wait until... after The Grievance System To Sue, The plaintiff will again under-go more Irreparably Harm That will Cause Permanate Injury And Damage

Plaintiff Can Show
By Clear And Convincing Evidence In
Case # 2:22-CV-00127-RFB-BNW
"No Proximate Cause" "Involuntary Servitude"
Can Show

#1 That He is likey To show at Trail That The Defendants Violated His Individual Rights And Committed The acts of Fraud

#2 Plantiff is likely To Suffer More "Irreparable Harm" is He Dosnt Receive a Preliminary Injunction

#3 The Threat Plantiff Face's is Greater Than The Harm The Municipal Officals Will Face, IF Plantiff is Granted Preliminary InJunction!

#4 This Requested Preliminary Injunction will Serve The Greater Good of Minority's, with "Plantiff" As well As The Greater Good To The Publics Intrest against a Curupt LATTER Branch STATE Goverment.....

Therefore Plantiff More Than "Qualifys" For Federal Relief From Modern Day Slavery To wit "Prison Plantation, Involuntary Servitude"

THE PETITIONER CONTENDS THE FOLLOWING CONSTITUTIONAL FINDINGS APPLY TO CASE # 2:22-CV-00127(-)RFB-BNW

*441 The decision of the Supreme Court of Tennessee as to the constitutional existence of the board of commissioners of Shelby County is one of this class. That court has repeatedly adjudged, after careful and full consideration, that no such board ever had a lawful existence; that it was an unauthorized and illegal body; that its members were usurpers of the functions and powers of the justices of the peace of the county; and that their action in holding the county court was utterly void. This court should neither gainsay nor deny the authoritative character of that determination. It follows that in the disposition of the case before us we must hold that there was no lawful authority in the board to make the subscription to the Mississippi River Railroad Company and to issue the bonds of which those in suit are a part.

On many subjects the decisions of the courts of a State are merely advisory, to be followed or disregarded, according as they contain true or erroneous expositions of the law, as those of a foreign tribunal are treated. But on many subjects they must necessarily be conclusive; such as relate to the existence of her subordinate tribunals; the eligibility and election or appointment of their officers; and the passage of her laws. No Federal court should refuse to accept such decisions as expressing on these subjects the law of the State. If, for instance, the Supreme Court of a State should hold that an act appearing on her statute book was never passed and never became a law, the Federal courts could not disregard the decision and declare that it was a law and enforce it as such. South Ottawa v. Perkins, 94 U.S. 260; Post v. Supervisors, 105 U.S. 667.

But it is contended that if the act creating the board was void, and the commissioners were not officers *de jure*, they were nevertheless officers *de facto*, and that the acts of the board as a *de facto* court are binding upon the county. This contention is met by the fact that there can be no officer, either *de jure* or *de facto*, if there be no office to fill. As the act attempting to create the office of commissioner never became a law, the office never came into existence. Some persons pretended that they held the office, but the law never recognized their pretensions, nor did the Supreme Court of the State. Whenever such pretensions were considered in that court, they were declared to be without any legal foundation, and the commissioners were held to be usurpers.

The doctrine which gives validity to acts of officers *de facto*, whatever defects there may be in the legality of their appointment or election, is founded upon considerations of policy and necessity, for the protection of the public and individuals whose interests may be affected thereby. Offices are created for the benefit of the public, and private parties are not permitted to inquire into the title of persons clothed with the evidence of such offices and in apparent possession of their powers and functions. For the good order and peace of society their authority is to be respected and obeyed until in some regular mode prescribed by law their title is investigated and determined. *442 It is manifest that endless confusion would result if in every proceeding before such officers their title could be called in question. But the idea of an officer implies the existence of an office which he holds. It would be a misapplication of terms to call one an officer who holds no office, and a public office can exist only by force of law. This seems to us so obvious that we should hardly feel called upon to consider any adverse opinion on the subject but for the earnest contention of plaintiff's counsel that such existence is not essential, and that it is sufficient if the office be provided for by any legislative enactment, however invalid. Their position is, that a legislative act, though unconstitutional, may in terms create an office, and nothing further than its apparent existence is necessary to give validity to the acts of its assumed incumbent. That position, although not stated in this broad form, amounts to nothing else. It is difficult to meet it by any argument beyond this statement. An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.

# * Constitutional Findings of Fact Conclusions of Law *

In Hildreth v. M'Intire, 1 J.J. Marsh. 206, we have a decision from the Court of Appeals of Kentucky which well illustrates this doctrine. The legislature of that State attempted to abolish the Court of Appeals established by her constitution, and create in its stead a new court. Members of the new court were appointed and undertook to exercise judicial functions. They dismissed an appeal because the record was not filed with the person acting as their clerk. A certificate of the dismissal signed by him was received by the lower court, and entered of record, and execution to carry into effect the original decree was ordered to issue. To reverse this order an appeal was taken to the constitutional Court of Appeals. The question was whether the court below erred in obeying the mandate of the members of the new court, and its solution depended upon another, whether they were judges of the Court of Appeals and the person acting as their clerk was its clerk. The court said: "Although they assumed the functions of judges and clerk, and attempted to act as such, *443 their acts in that character are totally null and void unless they had been regularly appointed under, and according to, the constitution. A *de facto* court of appeals cannot exist under a written constitution which ordains one supreme court, and defines the qualifications and duties of its judges, and prescribes the mode of appointing them. There cannot be more than one court of appeals in Kentucky as long as the constitution shall exist; and that must necessarily be a court '*de jure*.' When the government is entirely revolutionized, and all its departments usurped by force, or the voice of a majority, then prudence recommends and necessity enforces obedience to the authority of those who may act as the public functionaries, and in such a case the acts of a *de facto* executive, a *de facto* judiciary, and a *de facto* legislature must be recognized as valid. But this is required by political necessity. There is no government in action except the government *de facto*, because all the attributes of sovereignty have, by usurpation, been transferred from those who had been legally invested with them, to others who, sustained by a power above the forms of law, claim to act, and do act, in their stead. But when the constitution or form of government remains unaltered and supreme, there can be no *de facto* department, or *de facto* office. The acts of the incumbents of such departments or office cannot be enforced conformably to the constitution, and can be regarded as valid only when the government is overturned. When there is a constitutional executive and legislature, there cannot be any other than a constitutional judiciary. Without a total revolution there can be no such political solecism in Kentucky as a '*de facto*' court of appeals. There can be no such court whilst the constitution has life and power. There has been none such. There might be under our constitution, as there have been, '*de facto*' officers. But there never was and never can be, under the present constitution, a '*de facto*' office." And the court held that the gentlemen who acted as judges of the legislative tribunal were not incumbents of *de jure* or *de facto* offices, nor were they *de facto* officers of *de jure* offices, and the order below was reversed.

In some respects the case at bar resembles this one from Kentucky. *444 Under the constitution of Tennessee there was but one county court. That was composed of the justices of the county elected in their respective districts. The commissioners appointed under the act of March 9, 1867, by the governor were not such justices, and could not hold such court, any more than the legislative tribunal of Kentucky could hold the Court of Appeals of that State. In *Shelby County v. Butterworth*, from the opinion in which we have already quoted, Chief Justice Nicholson, speaking of the claim that Barbour Lewis, the President of the Board of County Commissioners, was a *de facto* officer, after referring to the decisions of the Supreme Court of the State holding that the board of commissioners was an illegal and unconstitutional body, said: "This left the organization of the county court in its former integrity, with its officers entitled to their offices and creating no vacancy to be filled by the illegal action under the act of 1867. It follows that Barbour Lewis could not be a *de facto* officer, as there was no legal board of which he could be president, and as there was no vacancy in the legal organization. The warrants issued by him show the character in which he was acting, and repel the presumption that he was a *de facto* officer. He could be under the circumstances, as we can judicially know from the law and pleadings in the case, nothing but a usurper. There must be a legal office in existence, which is being improperly held, to give to the acts of such incumbent the validity of an officer *de facto*."

Numerous cases are cited in which expressions are used which, read apart from the facts of the cases, seemingly give support to the position of counsel. But, when read in connection with the facts, they will be seen to apply only to the invalidity, irregularity, or unconstitutionality of the mode by which the party was appointed or elected to a legally existing office. None of them sanctions the doctrine that there can be a *de facto* office under a constitutional government, and that the acts of the incumbent are entitled to consideration as valid acts of a *de facto* officer. Where an office exists under the law, it matters not how the appointment of the incumbent is made, so far as the validity of his acts are concerned. It is *445 enough that he is clothed with the insignia of the office, and exercises its powers and functions. As said by Mr. Justice Manning, of the Supreme Court of Michigan, in Carleton v. The People, 10 Mich. 250, 259, "where there is no office there can be no officer *de facto*, for the reason that there can be none *de jure*. The county offices existed by virtue of the constitution the moment the new county was organized. No act of legislation was necessary for that purpose. And all that is required when there is an office to make an officer *de facto*, is that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary his election or appointment should be valid, for that would make him an officer *de jure*. The official acts of such persons are recognized as valid on grounds of public policy, and for the protection of those having official business to transact."

# * Constitutional Findings of Fact Conclusions of law *

"First. Without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.

"Second. Under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like.

"Third. Under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.

"Fourth. Under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such."

By this provision of the constitution the county court, as thus seen, was shorn of any power to order a subscription to stock of any railroad company without the previous assent of three-fourths of the voters of the county cast at an election held by its qualified voters, and, of course, it could not afterwards, without such assent, give validity to a subscription previously made by the commissioners. It could not ratify the acts of an unauthorized body. To ratify is to give validity to the act of another, and implies that the person or body ratifying has at the time power to do the act ratified. As we said in *Marsh v. Fulton County*, 10 Wall. 676, 684, where it was contended, as in this case, that certain bonds of that county, issued without authority, were ratified by various acts of its supervisors: "A ratification is, in its effect upon the act of an agent, equivalent to the possession by him of a previous authority. It operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally. It follows that a ratification can only be made when the party ratifying possesses the power to perform the act ratified. The supervisors possessed no authority to make the subscription or issue the bonds in the first instance without the previous sanction of the qualified voters of the county. The supervisors in that particular were the mere agents of the county. They could not, therefore, ratify a subscription without a vote of the county, because they could not make a subscription in the first instance without such authorization. It would be absurd to say that *452 they could without such vote, by simple expressions of approval, or in some other indirect way, give validity to acts, when they were directly in terms prohibited by statute from doing those acts until after such vote was had. That would be equivalent to saying that an agent, not having the power to do a particular act for his principal, could give validity to such act by its indirect recognition." 10 Wall. 676, 684. See also *County of Daviess v. Dickinson*, 117 U.S. 657; *McCracken v. City of San Francisco*, 16 Cal. 591, 623.

No election was held by the voters of Shelby County with reference to the subscription for stock of the Mississippi River Railroad Company after the new constitution went into effect. No subsequent proceedings, resolutions, or expressions of approval of the county court with reference to the subscription made by the county commissioners, or to the bonds issued by them, could supersede the necessity of such an election. Without this sanction the county court could, in no manner, ratify the unauthorized act, nor could it accomplish that result by acts which would estop it from asserting that no such election was had. The requirement of the law could not, in this indirect way, be evaded.

The case of *Aspinwall v. Commissioners of Daviess County*, 22 How. 364, is directly in point on this subject. There the charter of the Ohio and Mississippi Railroad Company, created by the legislature of Indiana in 1848, as amended in 1849, authorized the commissioners of a county, through which the road passed, to subscribe for stock and issue bonds, provided a majority of the qualified voters of the county voted on the first of March, 1849, that this should be done. The election was held on that day, and a majority of the voters voted that a subscription should be made. In September, 1852, the board of commissioners, pursuant to the acts and election, subscribed for 600 shares of the stock of the railroad company, amounting to $30,000, and in payment of it issued thirty bonds of $1000 each, signed and sealed by the president of the board and

CERTIFICATE OF SERVICE

I, Anthony K. Anderson, hereby certify that I am the Petitioner in this matter and I am representing myself *in propria persona.*

On this 21 day of March, 2022, I served copies of the Notice of Preliminary Injunction Constitutional Challenge Rule 51 Rule 51(a), in Case No. 00127-ART-BNW, and placed said document(s) in the United States Mail, first-class postage prepaid, addressed as follows:

Clerk of Court U.S. District Court
LLOYD G. GEORGE US COURT HOUSE
333 Las Vegas BLVD SOUTH-1334
Las-Vegas NEV
89101
E-File

E-File

DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Petitioner in the above-entitled action, and he has read this Certificate of Service and the information contained therein is true and correct.

Executed pursuant to 28 U.S.C. § 1746 and 18 U.S.C. § 1621 at March 2022 on this 21st day of Southern Desert C.T.N. PO Box 208 Indian Springs NEV. 89070

Anthony Kenneth Anderson

Anthony Kenneth Anderson NDOC No 1082999

Petitioner – In Propria Persona